IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PUGET SOUND ENERGY INC., a Washington corporation, | No. 87839-5-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JENNIFER L. BELL, an individual; BOEING EMPLOYEES' CREDIT UNION, a Washington credit union; PENNYMAC LOAN SERVICES, LLC, a foreign limited liability company; KING COUNTY, a Washington municipal corporation; ALL UNKNOWN OWNERS AND UNKNOWN TENANTS, | |
| Appellants. | |

BUI, J. —Puget Sound Energy (PSE) filed a petition to condemn a five-foot utility easement over property belonging to Jennifer L. Bell. After an evidentiary hearing, the trial court granted PSE's petition and entered an order finding the easement is necessary, for public use to improve electrical reliability and public safety. Bell appeals, contending the trial court's findings of fact were not supported by substantial evidence. We affirm.

FACTS

On June 3, 2024, pursuant RCW 80.32.080, PSE filed a petition seeking to acquire by eminent domain a permanent utility easement over two adjacent parcels (property) belonging to Bell. According to the petition, the easement was necessary for public use and to improve electrical reliability and public safety. On

October 25, PSE filed a motion for the court to adjudicate its petition. Bell objected to the motion and requested an evidentiary hearing to determine the need and scope of the easement.

On January 21, 2025, the trial court held an evidentiary hearing and entered a written order adjudicating public use and necessity. On appeal, Bell assigns error to the court's findings of fact numbers 24, 25, 27, and 29.

The unchallenged findings of fact are verities on appeal. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

PSE is a public service company in the business of generating, transmitting, and selling electric power. PSE is vested with the power of eminent domain. RCW 80.32.060. To improve electrical reliability and public safety for its customers on Vashon Island, PSE planned to upgrade the existing overhead electric distribution circuit with tree wire, replace aging utility poles, and relocate certain poles further from the roadway to meet King County clear zone requirements.

The frontage of Bell's property faces a right-of-way area with King County. Electrical pole 15 (P15) and pole 16 (P16) are in a row of poles located in the right-of-way area, and the poles do not sit on Bell's property. PSE is seeking an "overhang easement," where the easement is only for the wires overhead, wire blow out, vegetation management, and work clearances. PSE requires an easement because it must maintain and clear vegetation around any high voltage equipment. Vegetation management prevents power outages and ensures public safety; accordingly, PSE has a vegetation management and practice plan which

2

entails PSE cutting back vegetation around all its conductors every four to six years to ensure that trees and other vegetation do not encroach on its conductors. PSE needs enough vegetation clearance around its conductors to accommodate this four-to-six year growth cycle between the routine clearing. PSE generally seeks up to 10 feet of clearance from conductors to allow for routine vegetation management and to ensure that vegetation doesn't contact conductors over time.

Related to vegetation management and maintenance is the clearance space needed for wires, because during high winds, the lines sag and high winds can cause the lines to sway side-to-side, which is called "blowout." This swing is calculated for and is used to help determine the easement depth, so that PSE can remove vegetation in this swinging zone. Additionally, workers need clearance space to maneuver around the lines in their equipment "bucket" while working on the poles.

While there are numerous electrical poles in the right-of-way, running north and south along 115th Avenue SW, only the framing design of P15 and P16 are at issue. The framing design of the poles and their placement location will be discussed in further detail added below.

To accommodate Bell's request, PSE changed the design of P16 from "standard tangent framing" to "wing arm" design, which reduced the size of the easement from 10 feet to 5 feet, and PSE also changed the setback distance for vegetation trimming. According to lead engineer Andrea Crawford, the standard framing pole design provided "better reliability, better safety during and after

3

construction." Regarding P16, Crawford opined that the wing arm design was for "vegetation clearances and also worker safety." When asked whether P15 can be changed to a wing arm design, Crawford stated the change "is not in PSE's best practices" and the framing change would "not create the environment of safety and preventing outages." Regardless of the frame design, Crawford maintained that an easement over Bell's property would still be needed for conductor (or wire) blowout, wire overhang, vegetation management, and working clearances.

After an evidentiary hearing on January 21, 2025, the trial court entered findings of fact, conclusions of law, and an order adjudicating public use and necessity. The court concluded that the easement sought by PSE was "necessary to improve reliability and public safety for PSE customers . . . and is in the public interest."

Bell timely appealed.

ANALYSIS

Chapter 8.20 RCW governs eminent domain by corporations. For the power of eminent domain to be validly exercised, "the requirements of RCW 8.20 must be met." In re the Petition of Puget Sound Power & Light Co., 28 Wn. App. 615, 617, 625 P.2d 723 (1981). RCW 8.20.070 describes the trial court's role in reviewing corporate condemnation actions. Puget Sound Power & Light Co., 28 Wn. App. at 617. In adjudicating public use and necessity under this statute, a trial court must make three separate findings: "(1) the use in question is really a public use; (2) public interests require it; and, (3) the property to be acquired is

4

necessary to facilitate the public use." Puget Sound Power & Light Co., 28 Wn. App. at 617.

A public service corporation must demonstrate public use and necessity by a preponderance of the evidence. Puget Sound Power & Light Co., 28 Wn. App. at 620. Bell challenges only the necessity of the easement. "The word 'necessary,' when used in or in connection with eminent domain statutes, means reasonable necessity, under the circumstances of the particular case." City of Tacoma v. Welcker, 65 Wn.2d 677, 683, 399 P.2d 330 (1965). "It does not mean absolute, or indispensable, or immediate need, but rather, its meaning is interwoven with the concept of public use [ ] and embraces the right of the public to expect and demand the service and facilities to be provided by a proposed acquisition or improvement." Tacoma, 65 Wn.2d at 684.

Bell believes that since PSE already changed their easement request from 10 to 5 feet, then the easement is not necessary, and if PSE installed a wing arm at P15, then the easement would not be necessary.

Bell assigns error to four findings of fact (FF) entered by the trial court. "Findings of fact are reviewed under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "If the standard is satisfied, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently." Sunnyside, 149 Wn.2d at 879-80.

Regarding FF 29, Bell's opening brief assigned error to the trial court's finding that stated requiring PSE to redesign its project anytime an impacted owner raises a concern would negatively impact the public because of the potential delays and costs. However, Bell provides no argument or analysis for why this challenged finding is not supported by substantial evidence. Bell's challenge to this finding is waived, because parties "who assigned error to finding of fact but presented 'no argument in their opening brief on any claimed assignment' waived that assignment of error." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 497, 254 P.3d 835 (2011) (citing Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)); RAP 10.3(a)(4).

In Bell's reply brief, she argues for the first time that State ex rel. Postal Telegraph-Cable Co. v. Superior Court of Grant County, 64 Wash. 189, 196, 116 P. 855 (1911), reflects that a public corporation must demonstrate reasonable necessity, including balancing the relative benefit and injury to the respective parties. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy, 118 Wn.2d at 809. Even if we were to consider this argument, she fails to cite the record to demonstrate that PSE did not balance the relative benefits and injury to the respective parties. "We are not required to search the record for applicable portions thereof in support of the plaintiffs' arguments." Mills v. Park, 67 Wn.2d 717, 721, 409 P.2d 646 (1966). Accordingly, Bell waives this argument regarding FF 29.

6

For the remaining three findings entered by the court, as set forth below, Bell argues they were not supported by substantial evidence.

24. However, neither expert [of Bell's] had looked at PSE's entire project for the electrical system upgrade work along 115th Street. They were not sure whether and how the changes they recommended would impact other parts of PSE's project, whether other parts of the project would need to be redesigned, or whether the proposed changes would require new or larger easements on other nearby properties.

25. PSE presented evidence that the changes proposed by Ms. Bell's experts were less functional than the current project design, may be more costly, or might create other problems.

. . .

27. PSE is best positioned to determine how to appropriately design its power system to serve the public and to balance or accommodate the various and competing interests involved.

Bell also challenges FF 27 as conclusion of law or mixed question of law and fact. " 'A finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.' " State v. Williams, 96 Wn.2d 215, 221, 634 P.2d 868 (1981) (quoting Leschi Improvement Council v. Highway Comm'n, 84 Wn.2d 271, 283, 525 P.2d 774 (1974). "Where findings necessarily imply one conclusion of law the question still remains whether the evidence justified that conclusion." Williams, 96 Wn.2d at 221 (citing Cline v. Altose, 158 Wash. 119, 126, 290 P. 809, 70 A.L.R. 1471 (1930)). Thus, for FF 27, we still determine whether the evidence justified that conclusion.

To rebut PSE's position of project necessity, Bell presented evidence from two experts who testified at the hearing. Electrical engineer Michael Beanland relied on photographs and videos of the reconstruction work and Bell's

7

statements to him about the project for his testimony. Beanland did not visit the site or take any field measurements. Beanland admitted he did not review "any engineering documents or assembly drawings for the PSE poles." Regarding P15, Beanland questioned PSE's usage of the conventional crossarm, rather than the wing arm design, and PSE placing P15 at the center of a long run of poles rather than as a "dead-end" pole to provide balanced tension of the wires. The trial court asked whether Beanland reviewed PSE's entire project design "to determine where it would be appropriate to place a dead-end pole," and Beanland responded no.

Bell's other witness, lead engineer Anders Dahl, opined on the framing design of P15, drawing from his experience with electric line upgrades, pole replacements, and transmission distribution while employed at Snohomish County Public Utilities Department. Importantly, Dahl did not question PSE's decision to "put up a center mounting crossarm." Rather, he stated that the wing arm could still be converted thereafter because "there's really no reason not to" after construction. The court asked Dahl whether he reviewed PSE's entire design, Dahl responded no, that he only reviewed a "video" that Bell had taken while driving down the road.

The court then asked Dahl since all poles on 115th Ave SW have already been replaced, whether that would limit the design options of P15, and Dahl responded his "gut tells him" that PSE may need to modify "a half a degree of change" to the pole adjacent to P15. Dahl added that he would need to review

8

the "design process," which he admitted he had not reviewed prior to giving his opinion.

Based on this record, it is undisputed that neither of the expert witnesses called by Bell "looked at PSE's entire project for the electrical system upgrade work along 115th Street." Moreover, Beanland never visited the site, nor did he measure the area. When the court asked Dahl about changing the project, he relied on his "gut" more than actual calculations or measurements. Thus, a rational fair-minded person would conclude that her experts "were not sure whether and how the changes they recommended would impact other parts of PSE's project."

On the other hand, PSE's consulting engineer for the electric distribution engineering department, Andrea Crawford, testified that PSE decided to use a crossarm frame on P15 as an anchor point for wire pulling to prevent unbalanced tensions, especially when other poles north and south of P15 have wing arm designs. Crawford stated that the design "provides better reliability" during and after construction. Regarding P16, PSE was able to modify its design to a wing arm, as requested by Bell, because of where P16 was situated.

Regarding finding 27 that PSE was best positioned to determine the design, PSE's project manager for the project, Aaron Drake, testified that the project is to "replace aging infrastructure . . . and . . . requires replacing some of the poles so they meet current standards." The overhang is needed for vegetation clearing and preventing blowouts. A blowout may occur when the wind pushes the sag of the lines back and forth. Thus, the clearing out of

9

vegetation must provide enough of a buffer zone for a safe setback. Accordingly, the installation of new lines and poles is to serve the public.

In considering the public's opinion on the project, Crawford testified PSE originally modified the easement, according to Bell's request, by changing from tangent (or crossarm) framing to a wing arm framing at P16. This reduced the easement from 10 to 5 feet. Although PSE is using wing arm framing at P16, PSE still needs an easement for vegetation clearance and worker safety.

PSE's Contract Manager, Timothy Brett Conrad, also testified that PSE is deviating from their vegetation management standards and only requesting the minimum amount of vegetation clearance to complete the project and maintain safety. Once again, this shows that PSE considered Bell's position when requesting the easement.

In conclusion, there is substantial evidence to support FF 24, 25, and 27.

Because the trial court's findings are supported by substantial evidence, the court properly concluded that the easement is necessary to facilitate public use. The court properly granted the easement to PSE.

We affirm.

_Bui, J._

WE CONCUR:

_Chung, J._          _Smith, J._